UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM ALMEDER,
          Plaintiff

v.

TOWN OF BOURNE,
          Defendant

## COMPLAINT AND JURY DEMAND

### PARTIES

1.    The Plaintiff, William Almeder ("Plaintiff"), is a resident of Plymouth, Plymouth County, Commonwealth of Massachusetts.

2.    The Defendant, the Town Bourne ("Defendant"), is an independent body politic located in Bourne, Barnstable County, Commonwealth of Massachusetts.

### FACTUAL ALLEGATIONS

3.    Defendant first employed Plaintiff as a truck driver in its Department of Integrated Waste Management ("DIWM") at the town landfill in 2000.  Defendant wrongfully terminated Plaintiff's employment in 2008, leading him to be reinstated by order of a labor arbitrator in May, 2009.  Defendant has continued to employ Plaintiff since that time.

4.    On October 15, 2008, Plaintiff filed a Charge of Discrimination against Defendant with the Massachusetts Commission Against Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had violated his rights by creating a hostile work environment because of his religion, and

1

subjecting him to other adverse actions because of his religion, including terminating his employment on or about May 22, 2008.  In January and April 2010, Plaintiff filed amendments to his Charge, alleging that Defendant had taken additional adverse actions against him, including subjecting him to a hostile work environment, because of his religion and in retaliation for his having filed charges of discrimination against Defendant with the MCAD and EEOC.  In March 2011, Plaintiff filed an additional charge with the MCAD and EEOC, alleging Defendant had taken further retaliatory acts against him because of his religion and for filing his previous administrative charges.

5. Following an investigation of Plaintiff's 2008 and 2010 charges, on or about August 10, 2010, the MCAD issued a determination that it had found "probable cause" to credit Plaintiff's allegations that Defendant subjected him to unlawful disparate treatment and a hostile work environment because of his religion and protected activities in filing charges of discrimination.  Hereinafter, this will be referred to as "the Probable Cause Determination." It is attached here as Exhibit 1.  Plaintiff's allegations and the MCAD's findings, as set forth in the Probable Cause Determination, are hereby incorporated by reference.

6. Summarily, in or about 2000, Plaintiff became a born again Christian. Throughout his employment, Plaintiff has exercised his religious beliefs in plain view of his coworkers and managers at his place of work, and has interacted with them about his beliefs.

7. For example, citing his religious beliefs, Plaintiff asked his managers at the DPW, including DPW Director Daniel Barrett ("Barrett"), if he could "swap" one of his off days to Saturdays, so that he could observe the Sabbath.  Throughout his

2

employment Plaintiff has regularly read his bible in the plain view of his coworkers and managers during his work breaks, and has displayed a "Jesus fish" on his vehicle. Plaintiff frequently discusses his religious beliefs with his coworkers and supervisors, and answers their questions about his religious convictions. As a result of this activity, Plaintiff's religious convictions are well known to all of his coworkers and managers.

8. Plaintiff's managers and coworkers harbor animosity toward Plaintiff because of his religious beliefs and exercise of religion, and because throughout his employment, he has opposed their discriminatory treatment of him by objecting to it, filing internal grievances, and because he sought to remedy their discriminatory conduct by filing charges of discrimination with the MCAD and EEOC. As a result of this animosity, throughout his employment, on an ongoing and continuous basis, Defendant, by its agents, has subjected Plaintiff to a pervasive course of adverse actions, including but not limited to those set forth below, which have significantly and tangibly impacted Plaintiff's employment status in a negative manner.

9. Examples of the adverse actions include:

10. Numerous occasions, throughout his employment, in which Plaintiff's coworkers have attempted to offend Plaintiff by telling him religious jokes;

11. Numerous occasions, throughout his employment, in which Plaintiff's coworkers deliberately disturbed him when he was reading the Bible during work breaks;

12. Numerous occasions, throughout his employment, in which Plaintiff's coworkers have mockingly asked him questions about his religious beliefs during work hours;

13. Instances in which Plaintiff's coworkers have placed pornographic magazines on Plaintiff's vehicles to mock his religious convictions;

14. Numerous instances throughout Plaintiff's employment in which Plaintiff's coworkers have mockingly called Plaintiff "Father Bill" because of his religion despite Plaintiff's requests that they not do so;

15. Instances throughout Plaintiff's employment in which Plaintiff's coworkers and managers have used the Lord's name in vain in Plaintiff's presence, despite Plaintiff's protestations that use of the Lord's name in vain offends him;

16. An instance in which Plaintiff's coworkers mockingly placed a six-foot nativity scene at the front of his truck;

17. An instance, on or about May 23, 2009, the day after Plaintiff was reinstated, in which Plaintiff's coworkers placed a statute of the Virgin Mary at the top of the landfill to mock him;

18. Instances in which Plaintiff's managers subjected Plaintiff to bogus discipline, including a failed attempt to terminate his employment on May 22, 2008; suspending him on May 19, 2008; and verbally berating him in May 2008 and on other occasions throughout his employment;

19. Serial instances in which Plaintiff's coworkers have deliberately created adverse and dangerous conditions of work for Plaintiff, including one on or about November 24, 2009, in which a coworker, Ronnie Bosenengo, deliberately slammed an oversized load into the back of Plaintiff's truck; an occasion on which Bosenengo deliberately directed Plaintiff to back his truck over the edge of a hill at the landfill, causing it to flip; and an occasion when his coworkers deliberately placed a heavy "Jersey barrier" in an open container to frustrate Plaintiff's effort to pick it up;

20. Instances, after he was reinstated, in which the Defendant's mechanics warmed up all of the trucks in the yard except Plaintiff's;

21. Serial occasions, in December of 2009 and thereafter, in which Defendant failed to assign Plaintiff snow removal assignments for which he would have been entitled to premium pay, but which it provided to his coworkers;

22. Serial instances, after he was reinstated to work in May 2009, in which Defendant assigned newer and more efficient equipment to employees other than Plaintiff,;

23. By the act of Barrett, at or about the time Plaintiff was reinstated to work in May 2009, in ordering Plaintiff that he was not permitted to go off base;

24. By the act of Barrett, after Plaintiff was reinstated, in assigning him unsafe equipment, including a truck which is aging and unsafe;

25. By the act of Barrett, in retaliation for Plaintiff's complaint about the condition of the truck, in assigning Plaintiff to work as a laborer instead of a truck driver;

26. By the act of Barrett, on or about October 6, 2009, in telling Plaintiff that until further notice, he would continue to be assigned to the unsafe truck, and for Barrett's continuing act of assigning it to him;

27. By the act of Barrett, after Plaintiff was reinstated, in giving Plaintiff meaningless and useless assignments that require him to sit idly in his truck;

28. By the act of Barrett and other supervisors, throughout Plaintiff's employment; in assigning Plaintiff more difficult jobs than his coworkers;

29. On an ongoing and continuous basis, the Defendant's failure to provide Plaintiff with overtime, including by bypassing him for overtime in favor of other employees, and by manipulating Plaintiff's work schedule so that he would not be eligible for overtime to begin with. Plaintiff has not been afforded overtime since he was reinstated, but other similarly situated employees have consistently been provided overtime opportunities;

6

30. Since he was reinstated, on an ongoing and continuous basis, by not permitting Plaintiff to run the loader, thereby depriving him of out of grade pay which other similarly situated employees have received;

31. On an ongoing and continuous basis, forcing Plaintiff to work out of grade as a heavy equipment operator, without giving him out of grade pay for this work;

32. Bypassing Plaintiff for a promotional opportunity as a heavy equipment operator for which he was qualified, in April 2008, in favor of an employee who did not hold licensure for the position;

33. In May 2008, bypassing Plaintiff for consideration for two other advancement opportunities;

34. Making negative remarks about Plaintiff in radio transmissions to DPW employees to ridicule and humiliate him.

35. Defendant, by its agents, did not subject employees similarly situated to Plaintiff to similar adverse actions. Plaintiff was singled out for these adverse actions because of his religion and because he engaged in the protected activity of opposing Defendant's agents discriminatory acts, and filing charges of discrimination with the MCAD and EEOC.

**JURISDICTION**

36. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, federal question.

37. Plaintiff has satisfied all administrative prerequisites to suit under G.L. c. 151B and Title VII, 42 U.S.C. § 2000e.  (Ex.'s 2A-2C and 3.)

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e
### Discrimination In Terms And Conditions Of Employment Because Of Religion

38. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

39. The Defendant has violated Title VII by intentionally subjecting Plaintiff to each of the adverse employment actions set forth above because of his religion.

40. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e
### Hostile Work Environment Based On Religion

41. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

42. Defendant's pervasive course of adverse actions as set forth above, and its inactions in stopping the hostility to which Plaintiff has been exposed, have created a hostile work environment, based on Plaintiff's religion, which has unreasonably interfered with Plaintiff's employment.

43. Defendant's managers, including Barrett, were aware of the hostile work environment to which Plaintiff was subjected, but did nothing to stop it, and indeed, in Barrett's case, condoned and participated in creating it.

44. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT III
### Retaliation For Protected Activity – Adverse Actions
### Title VII, 42 U.S.C. § 2000e-3

45. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

46. In violation of Title VII, 42 U.S.C. § 2000e-3, Defendant took the adverse actions complained of above against Plaintiff because he engaged in the protected activity of opposing its discriminatory practices and filing charges of discrimination with the Equal Employment Opportunity Commission.

47. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT IV
### Retaliation For Protected Activity– Hostile Work Environment
### Title VII, 42 U.S.C. § 2000e-3

48. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

49. In violation of Title VII, 42 U.S.C. § 2000e-3, Defendant, by its agents, subjected Plaintiff to a hostile work environment that unreasonably interfered with his employment, because he engaged in the protected activity of opposing its discriminatory practices and filing charges of discrimination with the Equal Employment Opportunity Commission.

50. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT V
## G.L. c. 151B
### Discrimination In Terms And Conditions Of Employment Because Of Plaintiff's Religion

51. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

52. The Defendant has violated G.L. c. 151B by intentionally subjecting Plaintiff to the adverse employment actions set forth above because of his religion.

53. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT VI
### Hostile Work Environment Based on Religion
## G.L. c. 151B

54. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

55. Defendant's pervasive course of adverse actions as set forth above, and its inactions in stopping the hostility to which Plaintiff has been exposed, have created a hostile work environment that has unreasonably interfered with Plaintiff's employment.

56. Defendant's managers, including Barrett, were aware of the hostile work environment to which Plaintiff was subjected, but did nothing to stop it, and indeed, in Barrett's case, condoned and participated in creating it.

57. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT VII
### Retaliation For Protected Activity - Adverse Actions
### G.L. c. 151B, § 4(4)

58. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

59. In violation of G.L. c. 151B, § 4(4), Defendant took the adverse actions complained of above against Plaintiff, and by their pervasiveness, subjected him to a hostile environment of work which unreasonably interfered with his employment, because he engaged in the protected activity of opposing the discriminatory practices of its agents and filing charges of discrimination with the MCAD.

60. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

## COUNT VIII
### Retaliation For Protected Activity - Adverse Actions
### G.L. c. 151B, § 4(4)

61. Plaintiff realleges, reasserts and incorporates by reference the facts and allegations stated in the previous paragraphs as if fully stated herein.

62. In violation of G.L. c. 151B, Defendant, by its agents, subjected Plaintiff to a hostile work environment that unreasonably interfered with his employment, because he engaged in the protected activity of opposing its discriminatory practices and filing charges of discrimination with the Equal Employment Opportunity Commission.

63. As a result of Defendant's actions, Plaintiff has suffered harm, injury, and damages.

**WHEREFORE, THE PLAINTIFF REQUESTS THAT THE COURT ORDER:**

A. That the Plaintiff be compensated for any loss of wages and/or benefits incurred as a result of Defendant's unlawful acts;

B. That the Plaintiff be awarded an amount of money which will fairly compensate him for his emotional and physical pain and suffering;

C. That the Defendant pay the Plaintiff's costs and attorney's fees resulting from this action;

D. That the Defendant pay the Plaintiff interest on any judgment entered from the time of the filing of this action with the MCAD and EEOC;

E. That the Defendant be ordered to pay the Plaintiff punitive damages;

F. Such relief as may be just and proper that will make the Plaintiff whole.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

        Respectfully submitted,

        WILLIAM ALMEDER

        By his attorney,

        s/Daniel W. Rice
        Daniel W. Rice, BBO# 559261
        GLYNN, LANDRY & RICE, LLP
        25 Braintree Hill Office Park Suite 408
        Braintree, MA 02184
        (781) 849-8479 (office)
        (781) 964-8377 (mobile)
        daniel.rice@glhrlaw.com

Dated: August 2, 2011