**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **WILLIAM ALMEDER** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. |
| | ) 11-11376-NMG |
| TOWN OF BOURNE | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff William Almeder ("Almeder") brings this action for
employment discrimination on the basis of religion against
defendant Town of Bourne ("the Town"), which previously employed
plaintiff as a truck driver in the Town's Department of
Integrated Waste Management ("DIWM"). Defendant now moves for
summary judgment on plaintiff's claims and to strike plaintiff's
affidavit in support of his opposition.

**I.   Background**

Plaintiff began working for the Department of Integrated
Waste Management ("the DIWM") of the Town of Bourne as a laborer
in September, 2000 and was thereafter promoted to truck driver in
July, 2001, the position that he held until he was terminated in
May, 2008. While employed he was a member of the union and his
employment was governed by a collective bargaining agreement
("the CBA"). During the term of plaintiff's employment, Daniel

-1-

Barret served as the Operations Manager of DIWM.

Plaintiff self-identifies as a "born again Christian" and it appears that his supervisors and co-workers were aware of his views. In 2001, plaintiff requested to shift his off day from Sunday to Saturday so that he could observe his Sabbath day. Barrett agreed and plaintiff's regularly scheduled off day occurred on Saturdays. He brought his Bible to work with him and discussed his religious views with co-workers. At times, he also distributed religious pamphlets to his co-workers.

Plaintiff claims that his views were met with hostility and harassment throughout his tenure and the nature of those events remains disputed. According to plaintiff, two co-workers called him "Father Bill" whenever they addressed him, others told "St. Peter's jokes" that plaintiff found offensive, derided him while reading his Bible during lunch, placed pornography in his work area, and, in 2007, placed a life-sized nativity scene in front of his truck.

Plaintiff also received citations while on the job, which he characterizes as "bogus." He was given three written warnings during his employment: 1) in February, 2003, when he was cited for leaving work early without permission (although he claims it was during a snowstorm), 2) in April, 2006, when he was cited for damaging department equipment (although he claims it was already damaged), and 3) in February, 2007, for not wearing safety

glasses in an area where they are required (although he claims colleagues flouted this rule and have never been cited).

Plaintiff's relationship with his supervisors had deteriorated by the time of his termination. In May, 2007, plaintiff filed a grievance (pursuant to the CBA) claiming that he had been performing work as a heavy equipment officer, although this work is outside of his job description, without receiving "out-of-grade pay." Barrett and Brent Goins, the General Manager of the ISWM, refused his request. On May 5, 2008, Barrett selected Patrick Watt for the position of Equipment Officer II, a post that plaintiff had also sought.

Shortly thereafter, on May 13, 2008, plaintiff received a written warning for purportedly failing to complete an assignment in a timely manner. The following day, he was given a one-day suspension on the basis of "hostile" behavior toward his supervisors. The union filed a grievance on plaintiff's behalf on May 19, 2008, in which it claimed both the May 13 warning and the May 14 suspension violated the CBA and the plaintiff added his own allegations that he had been discriminated against. On May 22, 2008, Barrett terminated plaintiff, claiming that plaintiff's behavior had "interfered in the efficient [m]anagement of the Department."

In October, 2008 plaintiff filed a complaint pro se with the Massachusetts Commission Against Discrimination ("MCAD") and the

-3-

EEOC, alleging that the Town's actions resulted from
discrimination against him on the basis of his religious views.
While the MCAD investigation was ongoing, his union grievance
reached arbitration and the arbitrator reduced his termination to
a one-year suspension.

After his reinstatement, plaintiff continued to pursue his
MCAD and EEOC claims, amending them in 2010 and 2011.  During
that time, plaintiff claims that he was continually harassed and
discriminated against.  The alleged acts of discrimination and
the intent behind them also remain disputed but, among others,
include placement of a Virgin Mary statute in the landfill where
he worked, assignment of inferior equipment, denial of the
opportunity to operate heavy machinery and even an incident where
a co-worker caused plaintiff's vehicle to flip over while he was
working.

## II.  **Procedural History**

Plaintiff filed the Complaint in August, 2011, asserting
eight claims against defendant.  The first four counts allege
violations of federal law under Title VII of the Civil Rights
Act, 42 U.S.C. § 2000e et. seq. ("Title VII"): adverse employment
actions and creating a hostile work environment based upon
plaintiff's religion (Counts I and II) and retaliation against
plaintiff in the form of adverse employment actions and a hostile
work environment because of plaintiff's opposition to

discriminatory practices (Counts III and IV).

The remaining counts allege violations of the state law
analogs to Title VII: adverse employment action and hostile work
environment based upon plaintiff's religion in violation of
M.G.L.c. 151B (Counts V and VI), and retaliation based upon
plaintiff's opposition to those practices in violation of
M.G.L.c. 151B, § 4(4), by filing claims with both the MCAD (Count
VII) and the EEOC (Count VIII).

Defendant filed the pending motion for summary judgment on
all counts in November, 2012.  On the heels of plaintiff's
opposition to that motion, defendant moved to strike an affidavit
executed on December 7, 2012 and submitted by plaintiff to
include additional facts in support of his opposition to
defendant's motion.

## III. **Defendant's Motion to Strike**

A non-movant may not evoke genuine issues of material fact
through an affidavit of an interested witness who contradicts
"clear answers to unambiguous questions" without including a
satisfactory explanation for the proffer.  See Orta-Castro v.
Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st
Cir. 2006).  Two considerations appear probative in this inquiry:
whether the witness at her deposition was represented by counsel
who could have inquired about any ambiguity or misimpression
during the deposition, and whether the affidavit was executed

after defendant filed its summary judgment motion which may be
probative of the non-movant's attempt to create a genuine issue
of fact. See id. (applying both factors and affirming district
court); see also Colantuoni v. Alfred Calcagni & Sons, Inc., 44
F.3d 1, 4-5 (1st Cir. 1994).

In the instant case, plaintiff was deposed twice and was
represented by counsel on both occasions. He had three months
between those depositions to refresh his memory. The contested
affidavit was executed after and in response to defendant's
motion for summary judgment. Although the Court agrees with
defendant that, in many respects, plaintiff's post-deposition
affidavit embellishes his deposition testimony with facts that
were either omitted or are inconsistent with his testimony,
several other statements merely add details to plaintiff's sworn
testimony. Accordingly, although the Court considers the
ancillary information with some incredulity, it declines to
strike the affidavit in its entirety.

## VI. **Defendant's Motion for Summary Judgment**

### A. **Standard of Review**

The role of summary judgment is "to pierce the pleadings and
to assess the proof in order to see whether there is a genuine
need for trial." Johnson v. Gordon, 409 F.3d 12, 16-17 (1st Cir.
2005)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st
Cir. 1990)). The burden is on the moving party to show, through

-6-

the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. Johnson, 409 F.3d at 17. Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Discrimination on Basis of Religion (Counts I & V)**

Plaintiff contends that defendant violated both Title VII

-7-

and M.G.L.c. 151B by denying him "out-of-grade" pay and a promotion and ultimately terminating him on the basis of his religion. As it is also the practice of the Supreme Judicial Court of Massachusetts to apply federal anti-discrimination case law when construing M.G.L.c. 151B, the Court considers federal case law to assess both claims. See Noviello v. City of Boston, 398 F.3d 76, 91 (1st Cir. 2005) (applying federal case law to Chapter 151B claim and citing Wheatley v. Am. Tel. & Tel. Co., 636 N.E.2d 265, 268 (Mass. 1994)).

A claimant alleging employment discrimination in the conditions or terms of employment on the basis of religion must satisfy the familiar three-stage, burden-shifting framework first laid out in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). The plaintiff-employee carries the initial burden to come forward with sufficient evidence to establish a prima facie case of discrimination. Id. at 802. Generally speaking, to establish a prima facie case, the plaintiff must show that: (1) he is a member of a protected class, (2) he was qualified for the job, (3) the employer took an adverse employment action against him, and (4) the position remained open or was filled by a person with similar qualifications. Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate,

-8-

nondiscriminatory reason" for the adverse employment decision
taken against the employee. Id. The employer must clearly
articulate a non-discriminatory reason for the termination that
is legally sufficient to justify a judgment for the employer.
Tex. Dep't of Comm. Aff. v. Burdine, 450 U.S. 248, 255 (1981).
If that showing is made, the presumption of discrimination drops
away and the burden shifts back to the employee to prove that the
employer's explanation for the termination is actually a pretext
for retaliation. McDonnell Douglas, 411 U.S. at 803. It is at
the pretext stage where the Court considers any "comparative
evidence" adduced, i.e. whether the employer treated plaintiff
differently from similarly situated employees, although such
evidence is not absolutely required to maintain an action.
Kosereis, 331 F.3d at 213.

### i. Denial of Out-of-Grade Pay

Plaintiff first claims that, between 2001 and his
termination in May, 2008, he operated heavy equipment every
Sunday "out-of-grade" without compensation. While such work may
have been performed "out-of-grade" because plaintiff was employed
as a truck driver rather than a heavy machinery operator,
defendant responds that the out-of-grade system was informally
tracked in order to save administrative costs.

While the adduced motive of the defendant appears dubious,
plaintiff has failed to show that defendant's reason for denying

-9-

him out-of-grade pay was pretextual.  Plaintiff provides no
specific dates prior to his May, 2008 termination when he was
denied out-of-grade pay and, in spite of the lengthy period
during which he was purportedly denied such pay, apparently he
did not complain of the practice to supervisors until May, 2007.
The only evidence of disparate treatment provided is plaintiff's
affidavit that he observed other employees receiving out-of-grade
pay.  He does not, however, specify when or how those employees
received such pay.

        Although "comparative evidence" is required to prove
disparate treatment, the relevant circumstantial evidence does
not raise a genuine issue of material fact as to whether
plaintiff was intentionally denied out-of-grade pay on the basis
of his religion.  While plaintiff was allegedly harassed by his
co-workers, he does not allege that his supervisors ever
participated.  Far from being hostile toward plaintiff's
religion, it is undisputed that Barrett accommodated him by
altering his off day to permit his observance of the Sabbath and
by admonishing employees to desist from displaying pornography in
the workplace after plaintiff had complained about it.
Ultimately, reasonable inferences do not permit the Court to
conclude that defendant's failure to pay plaintiff "out of grade"
could have resulted from its intent to discriminate.

-10-

## ii.  Denial of Promotion

Plaintiff's second claim is that defendant impermissibly passed him over for promotion in May, 2008 because of his religion.  At that time plaintiff's supervisor, Daniel Barrett, selected Patrick Watt over plaintiff for the position of Equipment Officer II.  Defendant adduces as legitimate reasons for the selection Watt's superior qualifications and plaintiff's poor relationship with his supervisors.

Setting aside the latter reason, plaintiff fails to raise a genuine issue as to whether Watt's selection on the basis of superior qualifications was pretextual.  He alleged that Watt lacked the specific license required for the position but that claim was thoroughly disproved during discovery.  Watt testified that he, in fact, had held that license since 2005, and plaintiff admitted that he lacked any personal basis for believing that Watt was unlicensed.

Absent such an allegation, plaintiff's claim fails to raise a genuine issue of material fact to avoid summary judgment on this claim.  As discussed supra, the remaining circumstantial evidence is insufficient to permit the Court to draw a reasonable inference of intentional discrimination.  In contrast, Barrett testified that Watt had more experience and had developed skills suitable for the position and plaintiff admitted that he had no knowledge or information to support his contention that the

-11-

decision to hire Watt was based upon Almeder's religious beliefs.

### iii. **Termination**

Plaintiff third claim is that defendant impermissibly terminated him in May, 2008 on the basis of his religion. Defendant responds that plaintiff's termination occurred pursuant to the progressive discipline policy under the CBA, and resulted from plaintiff's poor job performance. The progressive discipline policy required defendant to provide a written notice of a suspension or warning and the reasons for that warning, on or before any action is taken.

Plaintiff contends that those disciplinary actions failed to adhere to that policy and therefore permit the Court to draw a reasonable inference of discrimination on the basis of his religion. Specifically, when defendant issued a warning to plaintiff on May 13, 2008, because he had failed to complete an assignment in a timely manner, plaintiff contends that the warning was "stale" because it was based upon events of the previous week and did not provide written notice of the problem because the warning itself was blank. Plaintiff claims that his suspension on the following day resulted from his objection to the May 13 warning. It is undisputed that the following week plaintiff had a heated confrontation with his direct supervisor, Jack Howard, and plaintiff concedes that the conversation had nothing to do with his religion.

Even if the sequence of events did not follow the letter of the CBA, there is insufficient evidence supporting a reasonable inference that plaintiff's termination resulted from discrimination on the basis of his religion. Plaintiff claims that his suspension resulted from his objection to a written warning rather than his religious beliefs. Proof of plaintiff's claim would suggest that his supervisors retaliated against him but not that they discriminated against him on the basis of his religion. The related circumstantial evidence is insufficient. Plaintiff does not claim that he was replaced by a non-religious person, making it less likely that defendant disciplined him as a pretext and, as discussed above, the alleged actions that created a hostile work environment were taken by co-workers not his supervisors.

Accordingly, defendant's motion for summary judgment will be allowed as to these counts.

## C.  Hostile Work Environment (Counts II, IV & VI)

Plaintiff alleges that defendant permitted the existence of a hostile work environment under Title VII. It allegedly resulted from both the impermissible discrimination on the basis of plaintiff's religion and his protected activities.

In order to prove a hostile work environment, a plaintiff must show that she was subjected to "severe or pervasive harassment that materially altered the conditions of her

-13-

employment." Noviello, 398 F.3d at 92 (internal citations and
quotations omitted). The harassment must be "objectively and
subjectively offensive." Id. (internal citations omitted). In
determining whether a reasonable person would find particular
conduct hostile or abusive, a court should consider factors such
as the

>   frequency of the discriminatory conduct; its severity;
>   whether it is physically threatening or humiliating, or
>   a mere offensive utterance; and whether it unreasonably
>   interferes with an employee's work performance.

Id. (internal citations omitted). The thrust of this inquiry is
to distinguish between the ordinary, if occasionally unpleasant,
vicissitudes of the workplace and actual harassment. Id.
(internal citations omitted).

Importantly, who commits the allegedly discriminatory
conduct is critical to whether an employer may be held
responsible: when co-workers, rather than supervisors, are
responsible for the creation and perpetuation of a hostile work
environment, an employer can be held liable only if the
harassment is causally connected to some negligence on the
employer's part. Id. at 95.

Plaintiff claims to have suffered through a litany of
harassing incidents while employed by defendant many of which do
not rise above the level of "mere offensive utterances" such as
his nickname, "Father Bill." At times, plaintiff provoked
reactions from colleagues by aggressively promoting his religious

-14-

views at work.  His memory of events is impeachable and he admits that, in spite of it all, he largely enjoyed his job and has not specifically explained how the alleged harassment affected his performance.

Moreover, most of plaintiff's allegations involve co-workers rather than supervisors.  Nevertheless, the frequency of the reported events, some of which were clearly aimed at plaintiff's religious beliefs and some of which could have resulted in physical harm to plaintiff, would, if proven, permit a reasonable jury to conclude that plaintiff labored in a hostile work environment that was allowed to exist as a result of his supervisor's negligence.  Accordingly, summary judgment with respect to those theories will be denied.

**D.   Retaliation (Counts III, IV, VII & VIII)**

Retaliatory discrimination claims based upon circumstantial evidence under both Title VII and Chapter 151B apply the familiar McDonnell Douglas burden-shifting framework requiring a prima facie showing, articulation of a non-discriminatory justification and ultimately proof by the plaintiff that that reason was pretextual. See, e.g. Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 35 (1st Cir. 2012).  In the context of retaliation, the prima facie burden requires a plaintiff to produce evidence that (1) he engaged in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal

-15-

connection exists between the protected conduct and the adverse action. Kosereis, 331 F.3d at 217.

Internal complaints and complaints filed with outside agencies, such as the EEOC, constitute protected activity. White v. New Hampshire Dept. of Corr., 221 F.3d 254, 262 (1st Cir. 2000). To be adverse, an employment action must "materially change the conditions of the plaintiffs' employ." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012). Adverse employment actions include, among other things, demotions, disadvantageous transfers or assignments and toleration of harassment by other employees. Id.; see also Noviello at 91 (permitting hostile work environment constitutes adverse employment action, triggering retaliation protections under both Title VII and Chapter 151B).

Plaintiff engaged in multiple protected activities: 1) he filed a grievance alleging denial of out-of-grade pay in May, 2007; 2) he filed another grievance upon receipt of his one-day suspension in May, 2008; 3) he filed an MCAD claim alleging religious discrimination in October, 2008; and 4) he twice amended that claim in April, 2010 and May, 2011. Plaintiff thereafter experienced multiple courses of conduct that he claims were adverse employment actions, namely, the creation of a hostile workplace, not being assigned to use heavy equipment, assignment of allegedly unsafe equipment, the denial of weekend

overtime and ultimately his termination in May, 2008.

While many of these actions, taken in the light most
favorable to the plaintiff, raise genuine issues of material fact
as to plaintiff's retaliation claim, two of them do not.
Plaintiff's assignment to use allegedly unsafe equipment fails to
raise a genuine issue of material fact as to whether it
constituted an adverse employment action.  While plaintiff
alleges that the vehicles were unsafe, he admitted in his
deposition that they both passed inspection and that, most
importantly, by his own admission, at least one co-worker used
the vehicle he was initially assigned for a "while" after he
refused to do so.  Under those circumstances, assignment of
equipment that others did not view as unsafe and which continued
to function did not "materially change" the conditions of his
employment.

Second, no reasonable juror could conclude that defendant's
purported denial of weekend overtime resulted from defendant's
impermissible intention to retaliate against plaintiff.  While
plaintiff was suspended, his supervisor, Mr. Barrett, rearranged
the schedule to eliminate the need for overtime shifts on
Sundays.  To overcome that legitimate reason, plaintiff claims
that defendant was not concerned with cost savings because he
selected another employee, Jack Howard, to perform those overtime
shifts who supposedly was paid overtime.  Plaintiff submits this

-17-

information as part of his ancilliary affidavit, rather than from his deposition testimony, and he does not specify any dates that Howard allegedly took those shifts nor does he explain how he knew that Howard took them.  This part of plaintiff's claim fails to raise a genuine issue of material fact concerning defendant's allegedly retaliatory intent.

With respect to the remaining theories, when viewed in the light most favorable to the plaintiff, there is sufficient evidence in the record to raise a genuine issue of material fact concerning whether defendant's actions were causally related to plaintiff's protected activities.  Summary judgment will therefore be denied on those theories of plaintiff's claim for retaliation.

**ORDER**

In accordance with the foregoing, and as previously set forth in this Court's Order entered February 5, 2013 (Docket No. 74), this is to confirm that:

1) defendant's motion to strike plaintiff's affidavit in opposition to its motion for summary judgment (Docket No. 39) is **DENIED**; and

2) defendant's motion for summary judgment (Docket No. 20) is:

> a) with respect to Counts I and V alleging discrimination on the basis of religion, **ALLOWED**;

-18-

b) with respect to Counts II and VII alleging hostile

work environment on the basis of religion, **DENIED**; and

c) with respect to Counts III, IV, VII, and VIII

alleging discriminatory retaliation based upon the

assignment of unsafe equipment and denial of weekend

overtime, **ALLOWED**, but with respect to retaliation

based upon plaintiff's other theories, **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated February 6 , 2013

-19-